**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky
      New Jersey Resident Partner
Jason E. Reisman, Esquire
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile: (609) 750-7701
Stephen.Orlofsky@BlankRome.com
Jason.Reisman@BlankRome.com
*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALAH HOBBI<br><br>    *Plaintiffs*,<br><br>v.<br><br>2U, INC.<br><br>    *Defendant*. | Civil Action No.: 2:25-cv-02263<br><br>**TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) OR, IN THE ALTERNATIVE, DISMISS PLAINTIFF'S COMPLAINT**<br><br>*Electronically Filed* |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER PURSUANT TO 28 U.S.C. §1404(a) OR, IN THE ALTERNATIVE, DISMISS PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................1

II.     STATEMENT OF FACTS ................................................................3

    A.    Plaintiff's Employment With 2U And Contractual Obligations...........3

    B.    Plaintiff's Separation From 2U And Filing Of The Instant Action ......8

III.    LEGAL ARGUMENT.......................................................................9

    A.    This Matter Must Be Transferred To The District Of Delaware
          Under The Mandatory, Exclusive Venue Provision In The
          Agreement ........................................................................10

    B.    The Court Lacks Jurisdiction Because There Is No Case Or
          Controversy Authorizing Exercise Of Its Power Under The
          Declaratory Judgment Act, Requiring Dismissal Of The
          Complaint In Its Entirety.....................................................15

    C.    Setting Aside the Threshold Venue And Jurisdiction Concerns,
          This Court Must, In The Alternative, Dismiss Plaintiff's Claims
          Under Rule 12(b)(6). ..........................................................18

        1.    Plaintiff Has Not Pleaded And Cannot Establish That
              The Provisions Violate The Sherman Act. ..............................19

            a.    Plaintiff Has Not Pleaded Relevant
                 Product/Service Or Geographic Markets.......................21

            b.    Plaintiff Has Failed To Plead Anti-Competitive
                 Effects In The Relevant Product/Service And
                 Geographic Markets. ..................................................23

        2.    Plaintiff Has Not Pleaded Cognizable Damages. ....................26

        3.    Delaware Law Controls Determination Of Whether
              Provisions Are Enforceable Under State Law. .........................27

        4.    Plaintiff Has Not Sufficiently Pleaded Rescission. .................34

IV.     CONCLUSION.............................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADP, LLC v. Kusins*,
    460 N.J. Super. 368 (App. Div. 2019) ................................................................30

*Agilent Techs., Inc. v. Kirkland*,
    No. CIV.A. 3512-VCS, 2010 WL 610725 (Del. Ch. Feb. 18, 2010) ................31

*Allegis Grp., Inc. v. Jordan*,
    No. CIV.A. GLR-12-2535, 2014 WL 2612604 (D. Md. June 10,
    2014), *aff'd*, 951 F.3d 203 (4th Cir. 2020) ........................................................33

*Argush v. LPL Fin., LLC*,
    No. CV 13-7821, 2016 WL 11663236 (D.N.J. Aug. 24, 2016) ........................16

*Armstrong World Indus., Inc. by Wolfson v. Adams*,
    961 F.2d 405 (3d Cir. 1992) ...............................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................18, 19

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*,
    571 U.S. 49 (2013) ........................................................................................*passim*

*Baar v. Jaguar Land Rover N. Am., LLC*,
    295 F. Supp. 3d 460 (D.N.J. 2018) ....................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................18

*Bldg. Materials Corp. of Am. v. Rotter*,
    535 F. Supp. 2d 518 (E.D. Pa. 2008) .................................................................22

*Brauser Real Estate, LLC v. Meecorp Capital Mkts., LLC*,
    Civ. A. No. 06-1816, 2008 WL 324402 (D.N.J. Feb. 4, 2008),
    *aff'd*, 484 F. App'x 654 (3d Cir. 2012), *and aff'd*, 484 F. App'x 654
    (3d Cir. 2012) ...............................................................................................27, 28

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*,
      775 F.3d 41 (1st Cir. 2014) ....................................................................14

*Delaware Exp. Shuttle, Inc. v. Older*,
      No. CIV.A. 19596, 2002 WL 31458243 (Del. Ch. Oct. 23, 2002) ...................31

*Deutsche Post Global Mail, Ltd. v. Conrad*,
      116 F.App'x 435 (4th Cir. 2004) ..........................................................30

*Eichorn v. AT & T Corp.*,
      248 F.3d 131 (3d Cir. 2001), *as amended* (June 12, 2001) ...............................25

*Ethicon, Inc. v. Randall*,
      2021 WL 2206106 ....................................................................29, 33

*Focus Fin. Partners, LLC v. Holsopple*,
      250 A.3d 939 (Del. Ch. 2020) ..........................................................29

*Fowler v. UPMC Shadyside*,
      578 F.3d 203 (3d Cir. 2009) ..........................................................19

*Fresh Made, Inc. v. Lifeway Foods, Inc.*,
      No. CIV.A. 01-4254, 2002 WL 31246922 (E.D. Pa. Aug. 9, 2002) .................22

*Gordian Med., Inc. v. Vaughn*,
      No. CV 22-319 (MN), 2024 WL 1344481 (D. Del. Mar. 30, 2024) .................32

*Gordian Med., Inc. v. Vaughn*,
      No. CV 22-319-MN-SRF, 2022 WL 16646626 (D. Del. Nov. 3,
      2022), *report and recommendation adopted,* No. CV 22-319 (MN)
      (SRF), 2022 WL 17084125 (D. Del. Nov. 18, 2022) ........................................12

*Groeneveld v. Verb Technology Co., Inc.*,
      No. CV2303766GCJBD, 2024 WL 1253296 (D.N.J. Mar. 25,
      2024) ......................................................................................12

*Heckman v. UPMC Wellsboro*,
      No. 4:20-CV-01680, 2021 WL 2826716 (M.D. Pa. July 7, 2021) ....................17

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
      602 F.3d 237 (3d Cir. 2010) ..........................................................20

iii

*In re: Howmedica Osteonics Corp*,
    867 F.3d 390 (3d Cir. 2017) .......................................................................10, 11

*Instructional Sys., Inc. v. Comput. Curriculum Corp.*,
    614 A.2d 124 (N.J. 1992) ...........................................................................29

*Intelus Corp. v. Barton*,
    7 F. Supp. 2d 635 (D. Md. 1998)...............................................................33

*Jun Zhang v. Gain Cap. Holdings, Inc*.,
    2021 WL 2103233 (D.N.J. May 25, 2021)................................................12

*Kan-Di-Ki, LLC v. Suer*,
    No. CV 7937–VCP, 2015 WL 4503210 (Del. Ch. July 22, 2015)....................32

*Kelly v. Jonus Grp., LLC*,
    No. CV 24-5354, 2025 WL 42965 (E.D. Pa. Jan. 7, 2025)................................17

*Klabin Fragrances, Inc. v. Hagelin & Co., Inc*.,
    No. SOM-C-12027-05, 2005 WL 1502254 (N.J. Super. Ct. Ch.
    Div. June 24, 2005).......................................................................................34

*Lifewatch Servs. Inc. v. Highmark Inc*.,
    902 F.3d 323 (3d Cir. 2018) ........................................................................21

*Lyons Ins. Agency, Inc. v. Wilson*,
    No. CV 2017-0092-SG, 2018 WL 4677606 (Del. Ch. Sept. 28,
    2018) ..............................................................................................................31

*Mancuso v. L'Oreal USA, Inc*.,
    2021 WL 365228 (D.N.J. Feb. 1, 2021) .........................................................11

*Mathew Transp., LLC v. Challenger Logistics Int'l Inc*.,
    No. 23-CV-20950 (SDW) (JRA), 2024 WL 1907254 (D.N.J. Apr.
    4, 2024) .........................................................................................................13

*MedImmune, Inc. v. Genentech, Inc*.,
    549 U.S. 118 (2007)......................................................................................17

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ........................................................................18

*N. Penn Towns, LP v. Concert Golf Partners*,
LLC, 554 F. Supp. 3d 665 (E.D. Pa. 2021) .......................................................21

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018)............................................................................................24

*Padco Advisors, Inc. v. Omdahl*,
179 F. Supp. 2d 600 (D. Md. 2002)....................................................................33

*Peck v. Jayco, Inc.*,
665 F. Supp. 3d 607 (D.N.J. 2023) .....................................................................14

*Poretskin v. Chanel, Inc.*,
No. CV2322613SDWMAH, 2024 WL 714232 (D.N.J. Jan. 29,
2024), *report and recommendation adopted*, No. 23-22613
(SDW)(MAH), 2024 WL 712583 (D.N.J. Feb. 21, 2024) ..................................11

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997) .........................................................................20, 23

*RHIS, Inc. v. Boyce*,
No. CIV. A. 18924, 2001 WL 1192203 (Del. Ch. Sept. 26, 2001) ....................32

*Saccomanno v. Honeywell Int'l, Inc.*,
No. A-0513-08T3, 2010 WL 1329038 (N.J. Super. Ct. App. Div.
Apr. 7, 2010)........................................................................................................33

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010) ...............................................................................18

*Standard Oil Co. of N.J. v. United States*,
221 U.S. 28 (1911)...............................................................................................20

*Stanton v. Greenstar Recycled Holdings, L.L.C.*,
No. CIV.A. 10-5658 MLC, 2012 WL 3201370 (D.N.J. Aug. 2,
2012) ....................................................................................................................16

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
530 F.3d 204 (3d Cir. 2008) ...............................................................................20

*TP Group–CI, Inc. v. Vetecnik*,
No. 1:16-CV-00623-RGA, 2016 WL 5864030 (D. Del. Oct. 6,
2016) ....................................................................................................................31

*Trico Equip., Inc. v. Manor*,
  *No*. CIV.08-5561(RBK), 2009 WL 1687391 (D.N.J. June 15,
  2009) ...................................................................................................................34

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
  627 F.3d 85 (3d Cir. 2010) .................................................................................25

*Woodell v. Coach*,
  2022 WL 17486262 (D.N.J. Dec. 7, 2022) ..........................................................13

**Statutes**

15 U.S.C. § 15 ...............................................................................................................27

28 U.S.C. § 1404(a) ................................................................................................1, 10

Defendant 2U, LLC ("2U" or "Defendant")[1] respectfully submits this memorandum in support of its motion to transfer pursuant to 28 U.S.C. §1404(a) or, in the alternative, dismiss with prejudice Plaintiff Salah Hobbi's ("Plaintiff" or "Hobbi") Complaint.

## I.    INTRODUCTION

Through this action, Plaintiff manufactures baseless causes of action in an attempt to invoke this Court's limited authority under the Declaratory Judgment Act and to do so in defiance of a mandatory, exclusive venue provision in his June 2019 employment agreement with Defendant requiring that all litigation between the parties proceed, if at all, in Delaware courts.

Plaintiff's strategy falters for two foundational reasons. First, the parties' agreement expressly requires that any action "arising out of, connected with, or related to the subject matter of [the] Agreement shall be brought exclusively in a state or federal court of Delaware with subject matter jurisdiction." Pursuant to well-established Supreme Court precedent, that venue provision *mandates*, at minimum, transfer of his Complaint to the District of Delaware. Second, this Court lacks jurisdiction, in any event, because there is no case or controversy sufficient to supports its exercise of jurisdiction under the Declaratory Judgment Act. Put simply,

---

[1] 2U, Inc. is now known as 2U, LLC, following its conversion to a limited liability company after the termination of Hobbi's employment.

1

the contractual provisions Plaintiff erroneously argues to be unenforceable have never been enforced or threatened to be enforced against him by Defendant and two of them have expired or have no prospective effect following termination of his employment with Defendant. That additional flaw in Plaintiff's Complaint requires dismissal with prejudice.

Setting aside those foundational venue and jurisdictional issues, the "causes of action" Plaintiff asserts fail on the merits, too, requiring dismissal under Rule 12(b)(6). Plaintiff attempts to invalidate the post-employment obligations in his agreement under both state law—although not under Delaware law, as he agreed in the agreement—and under Section 1 of the Sherman Act. There is no basis under either state or federal law to challenge the enforceability of the post-employment non-competition, non-solicitation, and invention assignment provisions in the agreement. As to Plaintiff's arguments under federal antitrust laws, he has failed to plead the essential elements for a Section 1 claim: (i) he has not pleaded the relevant product or service and geographic markets; (ii) he has not pleaded that 2U possesses market power within any such market; and (iii) he has not pleaded any actual cognizable anti-competitive effects or damages caused by the obligations he challenges. Plaintiff fares no better in his attacks under state law, not only because he fails to plead their unenforceability under Delaware law, which is the controlling law under the agreement, but also because the provisions he challenges are

enforceable and routinely enforced by courts applying the well-developed standards adopted in Maryland and New Jersey. Thus, even if this Court were to overlook the threshold venue and jurisdictional issues requiring transfer, or, in the alternative, dismissal, Plaintiff's Complaint must be dismissed on the merits as well.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Employment With 2U And Contractual Obligations.

2U employed Hobbi beginning on or around June 10, 2019, through August 15, 2024, as a Lead Instructor. (*Complaint* at ¶¶ 20-27.) In that role, he guided learners through hands-on courses, teaching in-demand digital skills reflective of current industry trends. (*Compl*. at ¶ 17.)

In exchange for, and, as a pre-condition to, his employment with 2U and his access to 2U's confidential information and business relationships, Hobbi executed an Intellectual Property, Non-Competition and Non-Solicitation Agreement in May 2019 (the "Agreement"). (*Compl*. at Ex. B.) The Agreement serves a vital role in protecting 2U's business, including the confidential information and business relationships with which Hobbi was entrusted in his role, just as Hobbi acknowledged in the Recital of the Agreement:

> 2U is engaged in a highly competitive Business [as defined by the Agreement]. [Hobbi's] role and relationship with 2U involves a position of trust and confidence in which [Hobbi] will have access to Confidential Information [as defined by the Agreement], and [Hobbi's] activities will directly or indirectly support 2U's business, research and development efforts, relationships with Customers [as defined by the

3

Agreement], and goodwill, all of which are the result of significant investments by 2U and are valuable interests, which if used or diverted to benefit a Competitor [as defined by the Agreement] would cause irreparable harm.

(*Id*. at Ex B at Recital.)

To effectuate the protection of 2U's legitimate interests in that regard, the Agreement contains certain obligations addressing confidentiality, ownership of intellectual property, competition with 2U during and after employment, and interference with 2U's business relationships with customers and educational partners and employees. (*Compl*. at Ex. B. ¶¶ 4(c); 5(a); 6.)

With respect to 2U's proprietary information, Hobbi agreed not to disclose any of 2U's Confidential Information, as defined by the Agreement, unless certain express conditions are met:

During and after [Hobbi's] employment with 2U, [Hobbi] shall hold all Confidential Information in the strictest confidence and shall not use or disclose any Confidential Information, or provide any third party with access to any Confidential Information, except as required in the course of Employee's job responsibilities for 2U, unless either (a) specifically authorized in writing by 2U; or (b) as permitted by law where the disclosure is made (1) in confidence as to government official or to an attorney, either directly or indirectly, solely for the purpose of reporting or investigating a suspected violation of law; (2) in a complaint or other document filed in a lawsuit or other proceeding, so long as any such filing is made under seal; or (3) in a lawsuit or proceeding against an employer for retaliation based on the reporting of a suspected violation of law and/or to an attorney in any such lawsuit so long as any document containing the information is filed under seal and the information is not otherwise disclosed, except pursuant to court order.

(*Id*. at Ex B ¶ 3.)

As it relates to intellectual property generated during, and in connection with Hobbi's employment with 2U, Hobbi expressly agreed, as is routine, that such work product belongs exclusively to 2U:

> [Hobbi] further acknowledges that all original works of authorship which are made by [Hobbi] (solely or jointly with others within the scope of and during the period of [Hobbi's] employment with 2U) and which are protectable by copyright are "works made for hire," as the term is defined in the United States Copyright Act. To the extent that any such writings or works of authorship by [Hobbi] are not, by operation of law or otherwise, deemed works made for hire, [Hobbi] hereby irrevocably assigns to 2U the ownership of, and all rights (included but not limited to copyright) in, such items, and 2U shall have the right to obtain and hold in its own name all rights of copyrights, copyright registrations and similar protections that may be available with respect to any such writings or works.

(*Id.* at Ex B ¶¶ 4(c), 4(f).)

The Agreement also contains reasonable post-employment restrictions on competition with the 2U business that Hobbi supported and regarding interference with 2U's business relationships.

As it relates to Hobbi's competition with 2U's business, Hobbi agreed to the following six (6)-month restriction:

> Given [Hobbi's] access and contributions to Confidential Information, the specialized training or education provided by or paid for by 2U, and/or Employee's direct or indirect access to and/or support of 2U's goodwill and Customer relationships, during [Hobbi's] employment with 2U and during the Restricted Period, [Hobbi] shall not, directly or indirectly (on [Hobbi's] own or in combination or association with others, and whether for [Hobbi's] own benefit or for the benefit of other persons or entities), perform, or assist others to perform, work involving the Business for a Competitor.

5

(*Id.* at Ex B ¶ 5(a).)[2]

The Agreement defines "Business" as "all products, technologies, and services in or for the digital education and online program management industries that 2U is now or at any point in time during [Hobbi's] employment with 2U engaged in or developing" and defines "Competitor" as "any person or entity involved in any business that competes, or is intended to compete with the Business." (*Id.* at Ex B ¶ 2.) With the aim of avoiding disputes and ensuring compliance, Hobbi also agreed that he would provide advanced notice of any future employment or role. (*Id.* at Ex B ¶ 5(b).)

As it pertains to interference with 2U's business relationships, Hobbi agreed that:

> . . . [he] shall not, directly or indirectly, (on [Hobbi's] own or in combination or association with others, and whether for [Hobbi's] own benefit or for the benefit of other persons or entities), contact, call upon, solicit business from, render services to, or market services, products, or platforms to any Customer and/or divert or interfere with, or attempt to interfere with, 2U's business or relationship with any Customer.

(*Id.* at Ex B ¶ 6.)[3]

---

[2] Section 2(g)of the Agreement defines the Restricted Period for the non-interference obligation as running for a period of six (6) months from the termination of Hobbi's employment.

[3] Section 6 of the Agreement defines the Restricted Period for the non-interference obligation as running for a period of twelve (12) months from the termination of Hobbi's employment.

The Agreement narrowly defines the term "Customer" to encompass "any educational institution (including any person or entity affiliated with any educational institution in a role related to digital education and/or online program management products, technologies, and services) (1) that [Hobbi] contacted, solicited business from, promoted or marketed products or services to, rendered any service to, was assigned to, had management responsibilities for, or received commissions, bonuses or incentives, or any other compensation at any point in time during the last eighteen (18) months of [Hobbi's] employment with 2U; and/or (2) that was the subject of Confidential Information to which [Hobbi] had access during [Hobbi's] employment with 2U." (*Id*. at Ex B ¶ 2.)

Importantly, Hobbi agreed that "[a]ny action, suit, or proceeding brought by [himself] arising out of, connected with, or related to the subject matter of [the] Agreement *shall be brought exclusively in a state or federal court of Delaware with subject matter jurisdiction*." (*Id*. at Ex B ¶ 11(b) (emphasis added).) Relatedly, Hobbi agreed that "any claim or dispute (whether in contract, tort or otherwise) arising out of or related to [the] Agreement" will "be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflict of laws provisions," consistent with the fact that 2U was a Delaware corporation (as admitted in the Complaint) with a management team and workforce dispersed across the country. (*Id*. at ¶ 13; Ex B ¶ 11(a).)

**B.      Plaintiff's Separation From 2U And Filing Of The Instant Action.**

On or about August 15, 2024, Hobbi's employment with 2U ended as part of a larger reduction in force by 2U.  (*Compl.* at ¶27.) In connection with that layoff, 2U offered Hobbi severance to which he would not otherwise have been entitled in exchange for his execution of a separation agreement. (*Id.* at ¶ 29.) But Hobbi declined to sign the proposed separation agreement, forgoing the severance he otherwise would have received but remaining subject to the terms of the Agreement he had agreed to years earlier.

At no point in time—let alone within the limited six (6)-month term of the post-employment, non-competition obligation under the Agreement—has Hobbi notified 2U of his intent to accept employment with any competitor. Further, the post-employment, non-competition obligation expired on its own terms on February 15, 2025—prior to Hobbi's filing of the instant Complaint, in which he purports to seek declaratory relief as to that now-expired obligation. (*Id.* at Ex B ¶ 5.) In addition, Hobbi has not alleged that 2U ever threatened to enforce, or took any action to enforce, his post-employment obligations at any time since he separated from 2U.

On April 3, 2025—nearly eight (8) months after his employment with 2U ended—Hobbi filed the instant action, asserting five causes of action against 2U: (1) a declaratory judgment count, seeking to invalidate certain of the obligations in the Agreement under Maryland and New Jersey law (despite having agreed that such

obligations are subject to Delaware law) (*Id*. at ¶¶ 33-59); (2) a declaratory judgment count, seeking to invalidate certain of the obligations in the Agreement under Section 1 of the Sherman Antitrust Act (*Id*. at ¶¶ 60-64); (3) a declaratory judgment count, seeking rescission of the obligations in the Agreement that violate the law (*Id*. at ¶¶ 65-68); (4) a declaratory judgment count, seeking to invalidate the forum selection clause in the Agreement in an *ad hoc* attempt to establish jurisdiction and venue in this Court (*Id*. at ¶¶ 69-72); and (5) a demand for entry of an order requiring 2U to pay Hobbi a "fine equal to the number of lost wages back dated to August 15, 2024" (*Id*. at ¶73 & *Ad Damnum* Clause).

## III.   LEGAL ARGUMENT

Plaintiff's Complaint fails for two threshold reasons and on the merits. First, this Court must, at minimum, transfer this action to the United States District Court for the District of Delaware pursuant to the terms of the mandatory, exclusive venue provision in the Agreement. Second, this Court lacks jurisdiction and power under the Declaratory Judgment Act because there is no "case or controversy" since the Provisions Plaintiff attacks as unenforceable have never been enforced or threatened to be enforced against him by Defendant and since two of them have expired or have no prospective effect following termination of his employment with Defendant. Finally, even if the Court were to evaluate the merits of Plaintiff's Complaint—

which it is not permitted to do given the venue provision in the Agreement—Hobbi has failed to state any viable claim against 2U under state and federal law.

**A.    This Matter Must Be Transferred To The District Of Delaware Under The Mandatory, Exclusive Venue Provision In The Agreement.**

The Agreement contains a mandatory forum-selection clause requiring that any "action, suit, or proceeding brought by [Hobbi] arising out of, connected with, or related to the subject matter of [the] Agreement shall be brought exclusively in a state or federal court of Delaware." (*Compl*. at Ex B ¶ 11(b).) That exclusive venue clause and the U. S. Supreme Court's binding precedent in *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49 (2013), mandate transfer of the Complaint to the District of Delaware.

Since the Supreme Court's watershed ruling in *Atlantic Marine*, it is well-established that federal courts, faced with an action filed in violation of an agreed-upon forum-selection provision, "should ordinarily transfer the case to the forum specified in that clause." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (citing *Atlantic Marine*, 571 U.S. at 62). As mandated under *Atlantic Marine*, a district court must engage in a modified analysis under 28 U.S.C. § 1404(a): (1) the district court is to give no weight to the forum preferred by "the party defying the forum-selection clause"—in this case, Hobbi; (2) the district court is to deem the private interests to "weigh entirely in favor of the preselected forum";

10

and (3) the district court is to analyze only public interest factors. *Howmedica*, 867 F.3d at 63-64 (citing *Atlantic Marine*,571 U.S. at 64). Those public interest factors include "the enforceability of the judgment"; "the relative administrative difficulty in the two fora resulting from court congestion"; "the local interest in deciding local controversies at home"; "the public policies of the fora"; and "the familiarity of the trial judge with the applicable state law in diversity cases." *Howmedica*, 867 F.3d at 63-64 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)). As the party flouting the mandatory forum-selection provision, Hobbi bears the burden of showing the public-interest factors "overwhelmingly disfavor" the transfer of his matter. *Atlantic Marine*, 571 U.S. at 67. He cannot meet that heavy burden.

Each of the public interest factors weighs in favor of enforcement of the Agreement's venue provision.

First, public policy—including under New Jersey law—strongly favors the enforcement of forum-selection provisions such as the one Hobbi agreed to in the Agreement. *See, e.g.*, *Mancuso v. L'Oreal USA, Inc.*, 2021 WL 365228, at *9 (D.N.J. Feb. 1, 2021). New Jersey, like Delaware, routinely enforces forum-selection clauses in employment agreements, rendering Plaintiff's request moot. *See e.g., Poretskin v. Chanel, Inc.*, No. CV2322613SDWMAH, 2024 WL 714232, at *7 (D.N.J. Jan. 29, 2024), *report and recommendation adopted*, No. 23-22613 (SDW)(MAH), 2024 WL 712583 (D.N.J. Feb. 21, 2024) (transferring case outside of New Jersey based

on forum-selection clause in employment agreement); *Groeneveld v. Verb Techonology Co., Inc*., No. CV2303766GCJBD, 2024 WL 1253296, at *6 (D.N.J. Mar. 25, 2024) (same); *Gordian Med., Inc. v. Vaughn*, No. CV 22-319-MN-SRF, 2022 WL 16646626, at *5 (D. Del. Nov. 3, 2022), *report and recommendation adopted,* No. CV 22-319 (MN) (SRF), 2022 WL 17084125 (D. Del. Nov. 18, 2022) (transferring case outside of Delaware based on forum-selection clause in employment agreement). As in *Atlantic Marine*, "**extraordinary circumstances** unrelated to the convenience of the parties" do not exist here, and because of that, Plaintiff cannot set forth any legitimate reason that the forum selection clause should not be enforced. 571 U.S. at 62 (emphasis added). Hobbi's next attempt to attack the enforceability of the forum-selection provision as the product of an "adhesive employment contract" (*Compl*. at ¶ 71) is an unsupported attempt to rationalize his breach of it and is not a cognizable basis to disregard it. Indeed, forum-selection clauses are routinely upheld under circumstances "involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause." *See Jun Zhang v. Gain Cap. Holdings, Inc*., 2021 WL 2103233, at *22 (D.N.J. May 25, 2021) (collecting cases) (quoting *Home Source Indus., LLC v. Freightquote.com, Inc*., Civ. No. 14-2001, 2014 WL 6609051, at *5 (D.N.J. Nov. 19, 2014)). Hobbi's assertion that enforcement of the forum-selection provision would be so unreasonable that it would deprive him of his day in court is also baseless and an attempt at relying upon

private interest factors in disregard of the Supreme Court's directive in *Atlantic Marine* that courts ignore those factors when faced with an exclusive venue provision. Moreover, Hobbi's conclusory reference to "financial and practical burdens of litigating in Delaware" (*Compl.* at ¶ 71) disregards that litigation in a remote forum is a fact of life in this modern era with electronic case filings, and that traveling from New Jersey to Delaware for any necessary court appearances during litigation, which would otherwise take place remotely, does not deprive Hobbi of his day in court. *See Mathew Transp., LLC v. Challenger Logistics Int'l Inc*., No. 23-CV-20950 (SDW) (JRA), 2024 WL 1907254, at *3 (D.N.J. Apr. 4, 2024) (finding the travel and costs associated with litigating in a country in which plaintiff does not reside do not rise to a level so gravely difficult and inconvenient to be unreasonable and unjust); *Woodell v. Coach*, 2022 WL 17486262, at *2–3 (D.N.J. Dec. 7, 2022) (concluding that a party failed to establish unreasonableness despite the argument that travel from New Jersey to Michigan presented inconvenience). Accordingly, there is no public policy basis to disregard the venue provision or otherwise "overwhelmingly" weighing against transfer. To the contrary, well-established public policy supports enforcement of the venue provision in the Agreement.

Second, available federal judiciary data indisputably confirms that New Jersey district courts face approximately 40 times more congestion than Delaware district courts, supporting transfer of Plaintiff's Complaint. *See, e.g., United States*

13

*District Courts National Judicial Caseload Profiles for the District of Delaware and District of New Jersey,* US COURTS, https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf (last visited June 8, 2025) attached hereto as Exhibit A (showing 83,374 pending cases in the District of New Jersey as compared to 2,338 pending cases in the District of Delaware as of December 31, 2024); *Peck v. Jayco, Inc.*, 665 F. Supp. 3d 607, 615 (D.N.J. 2023) (transferring case outside of New Jersey where New Jersey courts faced greater congestion than transferee forum).

Third, the District of Delaware is more familiar with Delaware state law, including as it pertains to the matters related to the Agreement; and Hobbi and 2U already agreed that Delaware law was the governing law for any claims arising from the Agreement. (*See Compl.* at Ex B ¶ 11(a).)

Since none of these public interest factors favors allowing this matter to proceed in New Jersey courts (let alone "overwhelmingly," as the Supreme Court required in *Atlantic Marine* to avoid transfer), this Court should reject Hobbi's attempt to evade the exclusive venue provision he agreed to years ago, and, at minimum, transfer his Complaint to the District of Delaware.[4]

---

[4] Alternatively, this Court may also dismiss the Complaint without prejudice for Plaintiff to refile in the District of Delaware. Indeed, *Atlantic Marine* declined to consider the appropriateness of dismissal under Rule 12(b)(6) pursuant to a valid forum selection clause. 571 U.S. 61. Due to this ambiguity, the First Circuit still considers it proper to use a Rule 12(b)(6) motion to dismiss an action involving a

**B.    The Court Lacks Jurisdiction Because There Is No Case Or Controversy Authorizing Exercise Of Its Power Under The Declaratory Judgment Act, Requiring Dismissal Of The Complaint In Its Entirety.**

In order for a federal court to hear Plaintiff's case, and exercise its limited jurisdiction under the Declaratory Judgment Act, Plaintiff must satisfy Article III of the Constitution's "case or controversy" requirement, by establishing "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992).

Although Hobbi attacks the enforceability of the post-employment, non-competition obligation in the Agreement under the Sherman Act, that obligation expired months before he filed this lawsuit; and 2U has not enforced (or threatened to enforce) the obligation against him at any time following the termination of his employment. Similarly, Hobbi attacks the enforceability of the routine invention assignment provision in the Agreement; however, that provision has only

---

forum selection clause; and it will "not decline to review or enforce a valid forum selection clause simply because a defendant brought a motion under 12(b)(6) as opposed to under § 1404 or forum non conveniens." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez,* 775 F.3d 41, 46 (1st Cir. 2014). As such, this Court could follow suit and dismiss the Complaint.

retrospective coverage and does not purport to require assignment of post-employment work product. In other words, the disclosure and assignment obligations in the Agreement pertaining to 2U work product applied only during his employment and have no prospective effect.

Not surprisingly, Hobbi does not allege that 2U has threatened to enforce the post-employment obligations prospectively, nor has he alleged that those obligations have somehow hindered his efforts to secure employment. Hobbi's conclusory allegation that he was "unable to accept offers or apply to roles in adjacent programs for fear of violating vague and overbroad restrictive covenants" (*Compl*. at ¶ 5) is insufficient to establish an actual case or controversy, particularly where the post-employment, non-competition obligation expired without incident and prior to the filing of the Complaint, where the invention assignment provision has no prospective application to post-employment work product, and where 2U has not sought or threatened to enforce such restrictions since the termination of Hobbi's employment. It is well-established that no case or controversy exists where a plaintiff has sought a declaratory judgment regarding expired contractual obligations. *See, e.g.*, *Argush v. LPL Fin., LLC*, No. CV 13-7821, 2016 WL 11663236, at *1 (D.N.J. Aug. 24, 2016) (dismissing claim seeking declaratory judgment regarding expired restrictive covenant because no live case or controversy existed); *accord Stanton v. Greenstar*

*Recycled Holdings, L.L.C.*, No. CIV.A. 10-5658 MLC, 2012 WL 3201370, at *7 (D.N.J. Aug. 2, 2012).

Lastly, though the post-employment, non-solicitation obligation in the Agreement technically remains active for the next few months, no case or controversy exists in the absence of any efforts or threat by 2U to enforce the covenant. Plaintiff does not plead any such efforts or threats by 2U, nor can he, as a result of which Plaintiff's claims stand in stark contrast to declaratory judgment claims brought in response to a cease-and-desist letter. *See, e.g.*, *Kelly v. Jonus Grp., LLC*, No. CV 24-5354, 2025 WL 42965, at *2 (E.D. Pa. Jan. 7, 2025) (holding case or controversy existed with respect to non-solicitation provision because employer threatened to initiate litigation against former employee in cease-and-desist letter); *Heckman v. UPMC Wellsboro*, No. 4:20-CV-01680, 2021 WL 2826716, at *11 (M.D. Pa. July 7, 2021) (concluding letters from employer to plaintiff demanding he stop practicing medicine in violation of his non-competition obligation and immediately repay defendant his signing bonus "establish[d] adversity of the parties' interests"); *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 130 (2007) (generally explaining "[l]ower Federal Courts…have long accepted jurisdiction" over declaratory judgment actions where "the plaintiff's self-avoidance of imminent injury is ***coerced by threatened enforcement action*** of a private party") (emphasis added). As with the other Provisions, Hobbi has not alleged that 2U has threatened,

or communicated an intent, to enforce his non-solicitation obligation at any time since the termination of his employment.

Accordingly, there is no live dispute or case or controversy with respect to any of the Provisions, and the Court lacks jurisdiction and should dismiss the Complaint in its entirety under Rule 12(b)(1).

### C. Setting Aside the Threshold Venue And Jurisdiction Concerns, This Court Must, In The Alternative, Dismiss Plaintiff's Claims Under Rule 12(b)(6).

Even if this Court were to entertain the merits in the face of the threshold venue and jurisdictional flaws in Plaintiff's Complaint, dismissal under Rule 12(b)(6) is still required.

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To determine the sufficiency of a complaint, a court must (1) note the elements required to plead each asserted claim, (2) identify any allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth," and (3) determine whether the remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*,

629 F.3d 121, 130 (3d Cir. 2010) (quoting and citing *Iqbal*, 556 U.S. at 679-80). In doing so, the Court must accept the well-pleaded facts alleged in the Complaint and draw all reasonable inferences in Plaintiff's favor, but the Court is not required to credit "unwarranted deductions" of fact or "sweeping legal conclusions cast in the form of factual allegations." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Plaintiff's Complaint has failed to state any cognizable claim for relief under the Declaratory Judgment Act (or otherwise) for multiple reasons, and this Court (or any court entertaining the merits) must dismiss the Complaint.

### 1. Plaintiff Has Not Pleaded And Cannot Establish That The Provisions Violate The Sherman Act.

Plaintiff relies upon Section 1 of the Sherman Act ("Section 1") to challenge the enforceability of the Provisions and as the primary basis for this Court's exercise of its authority under the Declaratory Judgment Act. Even assuming his challenge could be cognizable under Section 1,[5] Plaintiff has not pleaded the elements required to state a Section 1 claim.

---

[5] It should go without saying that, if routine restrictive covenants of the sort Plaintiff challenges in this action could constitute violations of Section 1, then there would

19

In order to plead a violation of Section 1, Plaintiff must allege: (1) concerted action;[6] (2) *that produced anti-competitive effects within the relevant product/service and geographic markets*; (3) that the concerted actions were illegal; and (4) that plaintiff was injured as a proximate result of the concerted action. *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc*., 602 F.3d 237, 253 (3d Cir. 2010) (citing *Gordon v. Lewistown Hosp*., 423 F.3d 184, 207 (3d Cir.2005)) (emphasis added).

In addition, because Plaintiff's claim is not predicated upon any conduct that could be characterized as violative *per se* (such as an express agreement between direct competitors on the price they will charge for their competing products), he must overcome the more deferential rule of reason analysis applicable to any general allegation of an unreasonable anticompetitive effect resulting from an agreement. Here, because Plaintiff challenges a restrictive covenant agreement between 2U and himself—as opposed to a pact between competitors, for instance—Plaintiff has the

---

have been no reason for the Federal Trade Commission to seek to employ Section 5 of the Federal Trade Commission Act in an attempt—which was defeated in the courts—to ban functional non-competition agreements.

[6] Notably, in this regard, Section 1 is focused on concerted anti-competitive conduct between multiple actors and does not apply to unilateral activity such as 2U's use of restrictive covenant agreements. *See, e.g.*, *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc*., 530 F.3d 204, 219 (3d Cir. 2008) (citing *Rossi v. Standard Roofing, Inc*., 156 F.3d 452, 465 (3d Cir.1998)) (because § 1 of the Sherman Act by its terms requires concerted action, "unilateral activity, no matter what its motivation, cannot give rise to a § 1 violation").

burden of establishing that 2U "exercises market power within" the relevant markets, *Queen City Pizza, Inc. v. Domino's Pizza, Inc*., 124 F.3d 430, 435 (3d Cir. 1997), and that "the challenged acts are unreasonably restrictive of competitive conditions" therein, *Standard Oil Co. of N.J. v. United States*, 221 U.S. 28, 31 (1911).

This Court should not countenance Plaintiff's audacious challenge to the enforceability of the Provisions he agreed to *years* ago and from which he benefitted in exchange for, among other valuable consideration, his employment with 2U and the access 2U provided to its confidential information and trade secrets and to its valuable business relationships and associated goodwill. Even were the Court to conclude that Section 1 applies, Plaintiff has not pleaded (and cannot plead) a Section 1 claim meeting those stringent pleading requirements.

### a. Plaintiff Has Not Pleaded Relevant Product/Service Or Geographic Markets.

When pleading relevant product/service and geographic markets affected by alleged anticompetitive actions, a plaintiff must define the markets by, among other facts, identifying the products or services offered by the defendant, along with an explanation of all interchangeable and substitute products or services (pursuant to the "rule of reasonable interchangeability" and a product/service's cross-elasticity of demand). *Lifewatch Servs. Inc. v. Highmark Inc*., 902 F.3d 323, 337 (3d Cir. 2018). Courts within this Circuit routinely dismiss Section 1 claims when a Plaintiff fails to plead adequately the relevant product/service and geographic markets. *See,*

*e.g., N. Penn Towns, LP v. Concert Golf Partners*, LLC, 554 F. Supp. 3d 665, 699 (E.D. Pa. 2021) (dismissing complaint where plaintiff made no reference to reasonable interchangeability or the cross-elasticity of demand when pleading relevant product market); *Baar v. Jaguar Land Rover N. Am., LLC*, 295 F. Supp. 3d 460, 466 (D.N.J. 2018) (dismissing on, among other grounds, plaintiff's failure to identify a cognizable relevant market); *Bldg. Materials Corp. of Am. v. Rotter*, 535 F. Supp. 2d 518, 524 (E.D. Pa. 2008) (dismissing on similar grounds.); *Fresh Made, Inc. v. Lifeway Foods, Inc.*, No. CIV.A. 01-4254, 2002 WL 31246922, at *5 (E.D. Pa. Aug. 9, 2002) (dismissing Section 1 claim where plaintiff did "not ground its allegations regarding product market with reference to the rule of reasonable interchangeability and cross-elasticity of demand").

Plaintiff's Complaint fails to satisfy these requirements. Plaintiff ignores his burden to identify the relevant product/service and geographic markets that were allegedly unreasonably affected by the Provisions in violation of Section 1. Indeed, Plaintiff fails to include alleged facts about ***any*** market at all. Although Plaintiff states that 2U works "with top universities to deliver bootcamps and online degree programs in fields like coding, cybersecurity, and data analytics"[7] (*Compl*. at ¶ 2), he fails to plead the product/service markets in which those offerings compete, let

---

[7] Plaintiff's use of the reference phrase "fields like …" is vague and limitless, dooming his ability to plead the contours of the relevant product/service market.

alone what reasonably interchangeable products/services exist and compete against such 2U offerings, and the nature of competition among them. To satisfy his pleading obligations, Plaintiff would be required to plead the respective market shares of these offerings or at least their relative competitive strength. Also absent from the Complaint is **any** reference to the relevant geographic market allegedly affected by the Provisions, whether it be local, regional, national, or international. For this reason alone, Plaintiff's claim seeking declaratory judgment that the Provisions violate Section 1 must be dismissed.

> **b.**    **Plaintiff Has Failed To Plead Anti-Competitive Effects In The Relevant Product/Service And Geographic Markets.**

Plaintiff's Section 1 claim also fails because he has not pleaded and established actual anti-competitive effects caused by 2U's actions. Even assuming Plaintiff had properly pleaded the contours of the relevant product/service and geographic markets his claim would still fail because he has not pleaded (and cannot plead) that 2U exercised market power in the relevant markets or any actual anti-competitive effects caused by the Provisions on the market at large.

To satisfy this independent pleading requirement, Plaintiff must first establish that Defendant exercises "market power" within the relevant product or service and geographic markets. *Queen City Pizza, Inc*., 124 F.3d at 435. Without sufficient market power in the relevant antitrust market, a defendant's agreement or conduct

simply cannot generate any anticompetitive effect. Here, Plaintiff has not alleged 2U's market power in any market, let alone in relation to any particular product or service or geography, an omission that alone warrants dismissal of his claims under Section 1.

Even had Plaintiff established 2U's power in the relevant markets, Plaintiff must also plead the "actual detrimental effects [on competition], ... such as reduced output, increased prices, or decreased quality in the relevant market." *Ohio v. Am. Express Co.,* 585 U.S. 529, 542 (2018). Yet, nowhere in the Complaint does Plaintiff articulate how the Provisions caused detrimental effects on competition within the relevant product/service and geographic markets, such as, *e.g.*, reduced output, increased profits, decreased quality, or any other cognizable anti-competitive effect. The only damage Plaintiff alleges the Provisions caused is "lost wages" to him personally, rather than any anti-competitive effects to the relevant market as a whole. Furthermore, even if such individual "lost wages" by themselves could sufficiently support an allegation of an injury to the market, which they cannot, Plaintiff did not plead (nor can he establish) a causal link between the "lost wages" and an anti-competitive effect in the relevant markets (which he has not identified). This, in part, is because Plaintiff himself attributes his inability to find new employment, and thereby earn wages, to multiple, unrelated immutable characteristics, including his national origin and age, which have nothing to do with the Provisions, let alone any

alleged conduct by 2U. (*See Compl.* at ¶ 6 ("At 61, Mr. Hobbi faces compounded barriers to re-employment in the technology sector—an industry known for its rampant ageism and preference for younger professionals. The combination of his age, national origin, and industry bias means that every missed opportunity cuts deeper, and every week of unemployment becomes more destabilizing."))

For this same reason, Plaintiff lacks the "antitrust standing" necessary to bring a Section 1 claim against 2U because he has failed to sufficiently allege an injury to competition itself, not just him personally, as required for antitrust claims (in addition to the requirement of satisfying Title III standing.) *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 101 (3d Cir. 2010) (citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc*., 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (defining antitrust injury required to establish antitrust standing as the "anticompetitive effect" caused by a violation of Section 1)). Pleading harm to Plaintiff himself is not a proxy for pleading antitrust injury under Section 1. *See Eichorn v. AT & T Corp*., 248 F.3d 131, 140 (3d Cir. 2001), *as amended* (June 12, 2001) (collecting cases) ("[A]n individual plaintiff personally aggrieved by an alleged anti-competitive agreement has not suffered an antitrust injury unless the activity has a wider impact on the competitive market.").

Accordingly, Plaintiff has not pleaded detrimental effects on competition caused by the Provisions, and he cannot plausibly do so. From a practical and

realistic standpoint, no single set of restrictive covenants in the employment agreement of an individual former employee, let alone restrictive covenants that have already expired, or which have no prospective effect, could meet the high burden Plaintiff faces, even at the motion to dismiss stage. Any attempt by Plaintiff to argue otherwise or to amend his Section 1 claims on this basis would be futile; his claims under Section 1 should, therefore, be dismissed with prejudice.

### 2.    Plaintiff Has Not Pleaded Cognizable Damages.

In Plaintiff's Fifth Cause of Action, he appears[8] to ask the Court to order Defendant pay a "fine equal to the number of lost wages back dated to August 15, 2024, and pursuant to the allowable fine under the Sherman Act," and to award him "reasonable attorney fees and expenses, along with statutory and required enhancements to said attorney fees." (*Compl*. at *Ad Damnum* Clause (e)-(f).) There is no legal or factual basis for this purported "cause of action," and it must be dismissed.

First, Plaintiff has not cited to any statutory or related authority that allows for a private right of action seeking any such "fine"—whether through an attempt to enumerate the fine through an unsubstantiated reference to "lost wages" or as a proxy for "damages." Defendant submits Plaintiff requested damages in the form of a

---

[8] The Fifth Cause of Action in Plaintiff's Complaint is confusing and seems to consist of only one non-substantive allegation, which incorporates the foregoing paragraphs, and then is followed by the *Ad Damnum* Clause.

"fine" either because he cannot actually establish necessary causation to invoke a Section 1 claim, or because he does not understand the entire statutory scheme at all. Because Section 1 only provides for criminal penalties, damages resulting from antitrust violations must be sought under Section 4 of the Clayton Act (15 U.S.C. § 15), notably not referenced in the Complaint. Under 15 U.S.C. § 15, there is no private right of action for any type of "fine"; Plaintiff cannot sidestep the requirement for establishing damages by relying upon this statute's provision for exemplary damages that are predicated upon Plaintiff having established actual damages. *See* 15 U.S.C. § 15 (a plaintiff "... shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee"). Finally, a remedy is not an independent "cause of action," and the count should be dismissed on that basis alone.

### 3. Delaware Law Controls Determination Of Whether Provisions Are Enforceable Under State Law.

As to his request for declaratory judgment (in his First Cause of Action) holding that the Provisions are unenforceable under Maryland and New Jersey state common law, Hobbi ignores the choice of law provision of the Agreement mandating that "any claim or dispute (whether in contract, tort or otherwise) arising out of or related to [the] Agreement" will "be governed by and construed in accordance with the laws of the State of Delaware *without regard to its conflict of laws provisions*." (*Compl.* at Ex B ¶ 11(a) (emphasis added).)

The language of the Agreement mandates the application of Delaware law. Indeed, courts in this jurisdiction should enforce "the terms of a contract that is unambiguous on its face." *Brauser Real Estate, LLC v. Meecorp Capital Mkts., LLC*, Civ. A. No. 06-1816, 2008 WL 324402, at *3 (D.N.J. Feb. 4, 2008), *aff'd*, 484 F. App'x 654 (3d Cir. 2012), *and aff'd*, 484 F. App'x 654 (3d Cir. 2012) (citing *Statewide Realty Co. v. Fidelty Mgmt. & Research Co., Inc.*, 611 A.2d 158 (N.J. 1992)). Courts in this Circuit have repeatedly honored choice-of-law provisions that explicitly and unambiguously state a particular governing law without regard to a conflict of laws. *See*, e.g., *Brauser Real Est., LLC*, 2008 WL 324402, at *3 (finding that choice of law provision explicitly stating the agreement "will be governed by and construed in accordance with *the laws of the State of New Jersey* without regard to the principles of conflict of laws thereof" governs) (emphasis in original). Here, the Parties' intent is clear and unambiguous. The Parties intended to have Delaware law control all actions arising out of the Agreement "without regard to its conflict of laws provisions." (*Compl*. at Ex B ¶ 11(a).) Therefore, the Court should apply Delaware law without regard to a conflict-of-law analysis.

However, even if this Court were to apply a conflict of law analysis, Delaware law still governs. A choice of law provision should be upheld, unless: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or (b) application of the law of the

28

chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issues and which would be the state of the applicable law in the absence of an effective choice of law by the parties. *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992) (citing Restatement (Second) of Conflicts of Laws § 187 (1969)).

For example, in *Ethicon, Inc. v. Randall*, the District Court of New Jersey enforced a New Jersey choice of law provision in an employment agreement after plaintiff attempted to apply Massachusetts law. No. 320CV13524BRMZNQ, 2021 WL 2206106, at *6 (D.N.J. May 28, 2021). In coming to its decision, the Court found that New Jersey had a substantial relationship to the parties because the employer was a New Jersey corporation and that New Jersey and Massachusetts law were substantially similar regarding the enforceability of noncompetition covenants, such that there was no meaningful difference in the relevant public policies between New Jersey and Massachusetts. *Id.*

Similarly, at the time of signing the Agreement, 2U was a Delaware corporation. (*Compl.* at Ex B ¶ 11(a).) Plaintiff cannot establish that New Jersey or Maryland has a more substantial relationship to the Parties or the underlying actions of the Complaint than Delaware. For that reason alone, Delaware law applies. However, separately, Plaintiff has not (and cannot) allege that the laws of Delaware

regarding enforcement of restrictive covenants are substantially different from those of New Jersey and Maryland. Indeed, all three states apply a reasonableness analysis when evaluating the enforceability of covenants. *Compare Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 958 (Del. Ch. 2020) (Delaware law generally enforces restrictive covenants that are "reasonable in scope and duration, . . . advance a legitimate economic interest of the [former employer], and . . . survive a balance of the equities") *with ADP, LLC v. Kusins*, 460 N.J. Super. 368, 400 (App. Div. 2019) (quoting *Solari Indus., Inc. v. Malady,* 55 N.J. 571, 581, 264 A.2d 53, 59 (1970)) (under New Jersey law, a restrictive covenant is deemed enforceable if it "simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public," in addition to the particular restrictions being reasonable in duration, area, and scope of activity) *and Deutsche Post Global Mail, Ltd. v. Conrad,* 116 F.App'x 435, 438 (4th Cir. 2004) (under Maryland law a restrictive covenant is enforceable if the employer has a legally protected interest, the restrictive covenant is no wider in scope and duration than is reasonably necessary to protect the employer's interest, the covenant does not impose an undue hardship, and the covenant does not violate public policy.) Accordingly, there is no legitimate difference between the laws or public policy of Delaware, New Jersey, or Maryland, as it relates to evaluating the enforceability of restrictive covenants. Therefore, the law of Delaware, not New Jersey or Maryland, controls.

Simply put, the enforceability of the Provisions cannot credibly be challenged under Delaware law. Indeed, Delaware law permits invention assignment agreements, like Plaintiff's, between employees and employers, so long as the assigned inventions are related to the employer's business or result from work performed by the employee for the employer. *Agilent Techs., Inc. v. Kirkland*, No. CIV.A. 3512-VCS, 2010 WL 610725, at *15 (Del. Ch. Feb. 18, 2010) (citing Del. Code Ann. tit. 19, § 805 (West)). Also, a non-competition provision lasting six-months after termination is reasonable under Delaware law. *See Lyons Ins. Agency, Inc. v. Wilson*, No. CV 2017-0092-SG, 2018 WL 4677606, at *5 (Del. Ch. Sept. 28, 2018) (citing *Delaware Exp. Shuttle, Inc. v. Older*, No. CIV.A. 19596, 2002 WL 31458243, at *13 (Del. Ch. Oct. 23, 2002)) enforcing two-year non-competition agreement noting that non-compete agreements that prohibit conduct "in competition with" the employer's business or that prohibit soliciting the employer's clients "inherently establish a geographic limit that ultimately protects the legitimate economic interests of the employer and provide a reasonable and foreseeable basis for ascertaining the territorial scope of the covenant not to compete, even if no geographic limitation is expressly set forth in the agreement")); *TP Group–CI, Inc. v. Vetecnik*, No. 1:16-CV-00623-RGA, 2016 WL 5864030, at *2 (D. Del. Oct. 6, 2016) (citing *Weichert Co. of Pennsylvania v. Young*, C.A. No. 2223–VCL, 2007 WL 4372823, at *3 (Del. Ch. Dec. 7, 2007)) (Delaware courts have routinely found

restrictive covenants with a duration of two years to be reasonable in duration); *cf. Delaware Exp. Shuttle, Inc.,* WL 31458243, at \*14 (enforcing two-year non-compete).

Likewise, a non-solicitation provision restricting Plaintiff, for a one-year period after his termination, from soliciting customers that he himself interacted with, and solicited business from, during the past year-and-a-half of his employment with 2U is indisputably reasonable. *See, e.g., Gordian Med., Inc. v. Vaughn*, No. CV 22-319 (MN), 2024 WL 1344481, at \*16 (D. Del. Mar. 30, 2024) (upholding two-year non-solicitation obligation with nearly identical language restricting plaintiff from soliciting any individuals who were customers of defendant during the last 18-months of plaintiff's employment); *Kan-Di-Ki, LLC v. Suer*, No. CV 7937–VCP, 2015 WL 4503210, at \*20 (Del. Ch. July 22, 2015) *quoting Research & Trading Corp. v. Pfuhl*, Civ. A. No. 12527, 1992 WL 345465 at \*12 (Del. Ch. Nov. 18, 1992) (if an employer's "market or the customer base of the business 'extends throughout the nation. . . and the employee would gain from the employment some advantage in any part of that market,' then the employer and the business may enter into an enforceable contract prohibiting the employee from soliciting those customers on behalf of a competitor regardless of their geographic location."); *RHIS, Inc. v. Boyce*, No. CIV. A. 18924, 2001 WL 1192203, at \*7 (Del. Ch. Sept. 26, 2001) (blue

penciling non-solicitation obligation from two years to one year, which the court found reasonable).

Even if this Court were to disregard application of Delaware law to this dispute—as Plaintiff agreed in the Agreement—there is no basis under Maryland or New Jersey that would support any challenge the enforceability of the Provisions. Contrary to Plaintiff's legal arguments in his Complaint, non-competition and non-solicitation obligations are enforceable under Maryland law. *See Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 642 (D. Md. 1998) (finding six-month non-compete with no geographical limitation reasonable); *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 607 (D. Md. 2002) (enforcing two-year non-compete agreement); *Allegis Grp., Inc. v. Jordan*, No. CIV.A. GLR-12-2535, 2014 WL 2612604, at *8 (D. Md. June 10, 2014), *aff'd*, 951 F.3d 203 (4th Cir. 2020) (enforcing two-and-a-half-year non-solicitation provision and holding that non-solicitation provisions are enforceable when tailored to the work that an employee performed before termination.)

New Jersey law is no different. Historically, New Jersey has enforced the assignment of inventions to an employer designed or conceived during the period of employment and related to the business of the employer. *Saccomanno v. Honeywell Int'l, Inc.*, No. A-0513-08T3, 2010 WL 1329038, at *4 (N.J. Super. Ct. App. Div. Apr. 7, 2010) (citing *Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 623 (1988) and

*Misani v. Ortho Pharm. Corp.*, 44 N.J. 552, 554, *cert. denied and appeal dismissed*, 382 U.S. 203, 86 (1965)). Similarly, the non-competition and non-solicitation provisions are unquestionably valid and enforceable under New Jersey law. *See Ethicon, Inc. v. Randall*, 2021 WL 2206106, at *21-22 (finding 18-month non-competition and non-solicitation restriction reasonable); *Trico Equip., Inc. v. Manor, No.* CIV.08-5561(RBK), 2009 WL 1687391, at *7 (D.N.J. June 15, 2009) (upholding two-year customer non-solicitation provision in light of employer's legitimate interest in protecting confidential information and customer relations); *Klabin Fragrances, Inc. v. Hagelin & Co., Inc.*, No. SOM-C-12027-05, 2005 WL 1502254, at *3 (N.J. Super. Ct. Ch. Div. June 24, 2005) (finding three-year non-solicit reasonable).

Accordingly, even if this Court were to apply Maryland or New Jersey law, Plaintiff has not alleged sufficiently that the Provisions are unreasonable and unenforceable; and Plaintiff's First Cause of Action should be dismissed.

### 4.    Plaintiff Has Not Sufficiently Pleaded Rescission.

In his Third Cause of Action, Plaintiff also requests that this Court rescind the Provisions and find them void *ab initio*. Rescission is a form of relief and is not an independent cause of action. For all of the reasons set forth herein establishing that Plaintiff's Complaint should be dismissed, that the Provisions are valid and

enforceable under applicable law, and that a separate cause of action for damages is improper, this "cause of action" likewise should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Complaint must, at minimum, be transferred to the District of Delaware, or, alternatively, dismissed.

DATED:  June 16, 2025                    Respectfully submitted,


**BLANK ROME LLP**
*A Pennsylvania LLP*

*/s/ Stephen M. Orlofsky*
Stephen M. Orlofsky
        New Jersey Resident Partner
Jason E. Reisman, Esquire
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile: (609) 750-7701
Stephen.Orlofsky@BlankRome.com
Jason.Reisman@BlankRome.com
*Attorneys for Defendant*